IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CHAPTER THIRTEEN |
| DOREEN MARIE GROCHOWSKI, | : | BANKRUPTCY NO.: 5:06-bk-51666-JJT |
| DEBTOR | : | |
| DOREEN MARIE GROCHOWSKI, | : | |
| PLAINTIFF | : | |
| vs. | : | |
| COMMONWEALTH FINANCIAL SYSTEMS, INC. d/b/a NCC AND EDWIN A. ABRAHAMSEN & ASSOCIATES, P.C., | : | |
| DEFENDANTS | : | **ADVERSARY NO.: 5:11-ap-00223-JJT** |

# **OPINION**[1]

Unfortunately, the Defendant in this adversary is no stranger to this Court. This adversary presents the third time before me wherein the Defendant had to defend itself against allegations that it participated in a course of conduct leading to allegations of violations of the automatic stay under 11 U.S.C. § 362(k)(1)[2]. The instant adversary has also added a count alleging violations of the discharge injunction under 11 U.S.C. § 524.

A short rendition of the procedural posture of this case is helpful not only for an understanding of how the parties got to this point, but it also sheds light on some of the

---

[1] Drafted with the assistance of Richard P. Rogers, Law Clerk.

[2] See Armbruster v. Commonwealth Financial Systems, Inc. d/b/a NCC, Adversary No. 5:09-ap-00223-JJT and Rasieleski v. Commonwealth Financial Systems, Inc. d/b/a NCC, Adversary No. 5:10-ap-00155-JJT.

reasoning of this Court in coming to its disposition. Two Defendants are named in this adversary: Commonwealth Financial Systems, Inc. d/b/a NCC and Edwin A. Abrahamsen & Associates, P.C. Prior to the initial trial date, the parties filed a joint Stipulation of facts for trial (Doc. #24). Paragraph 72 of the Stipulation reads, "Defendants' conduct violated 11 U.S.C. § 362(a)." An evaluation of the testimony elicited from the Debtor permits me to find that the Debtor suffered actual damages. These damages can be itemized as follows: $.78 for postage; $6.00 for gas to attend the trial; and loss of a day's wage at $80.00. I further find that the Debtor suffered emotional distress due to the various violations of the automatic stay which I find numbered 29. These violations by the Defendant are postpetition contacts by way of letter and phone calls directed to the Debtor.

During colloquy with the parties at the first trial date, it was determined that the primary decision was whether there was sufficient evidence of damages presented to the Court to compel a further hearing to consider the imposition of punitive damages. The Court ordered the parties to file briefs and set a second trial date. The Court having previously determined that punitive damages were appropriate against the Defendant Commonwealth in the Armbruster case, found it appropriate to go to a hearing for punitive damages against that Defendant. Of course, in the meantime, the Defendant law firm settled with the Plaintiff.[3]

At the second trial date, the focus of the presentation centered on two grounds. The first was whether punitive damages should be imposed for the admitted violations. The second and more compelling issue was addressing what appeared to be a reoccurring problem in the

---

[3] Plaintiff has accepted an offer of judgment from Defendant, Edwin A. Abrahamsen & Associates, P.C. which resolved the substantive portion of the claim against that Defendant, and the parties have agreed to defer the issue of attorney's fees and costs associated with that claim against the law firm until a time after the Court resolves the request for liability against Defendant, Commonwealth Financial Systems, Inc. See Stipulation at Doc. #27.

institution leading to repeated violations of the automatic stay not just in this case but in other cases filed in the District. The only witness presented was Kevin Wright, the CFO of Commonwealth Financial Systems, Inc. Under direct and cross examination and further questioning by the Court, Mr. Wright testified as to the changes in procedures since he became CFO as compared to those procedures which were in place during the time when the violations of the stay occurred. He also testified as to what procedures are currently implemented when the business becomes aware of the bankruptcy of a person whom the Defendant is attempting to collect a debt from. Mr. Wright could not describe how the current procedures were different, if at all, from the procedures that were in place when the violations occurred. Furthermore, his description of the current procedures was, at best, sketchy and uninformative.

      The Court and the parties all agreed that the financial status of the Defendant was important vis-à-vis this Court's determination as to the extent of punitive damages. Documentary evidence to show the Defendant's financial status came by way of three cash flow statements for the years 2009 through 2011. The statements showed that the Defendant was paying out more cash than was coming into the business for those three years. These cash flow statements, however, do not give an adequate picture of the Defendant's financial status.

      At the conclusion of the hearing and under questioning by the Court, Mr. Wright indicated that there was a "procedures manual" setting forth in detail the procedures in place when a person, who is subject to collection actions from the Defendant, files bankruptcy. Further, in order to present a more accurate picture of the company's financial status, Mr. Wright also indicated that there were financial statements. Over objection of the Plaintiff, the Court continued the trial on damages and kept the record open in order to give the Defendant an

opportunity to present the current procedures manual and financial statements of the Defendant. The entirety of the presentation at that continued hearing was a stipulation by the parties that the Defendant had "no net worth." With the closing of the record, the Court can make the following observations.

This adversary represents the third time before me that a Complaint against the Defendant has been filed alleging similar violations of the automatic stay in the Defendant's attempt to collect pre-petition debts post-bankruptcy. In one of the two prior Complaints, the Court found the Defendant's behavior so egregious that it imposed not only actual damages and attorney's fees, but also punitive damages. Important to my resolution of this adversary was a determination of what steps the Defendant has taken to cure apparent deficiencies in its procedures in collecting against debtors post-petition. What was presented was a witness that could not testify as to what the procedures were prior to him becoming the CFO of the Defendant; a lack of knowledge of what the current procedures are; and whether there has been a change from the old procedures to the new ones. The lack of a record on what procedures are in place together with a stipulation that, post-petition, there were 29 separate violations of the automatic stay[4] compels me to find that in addition to the actual damages referenced earlier, I will assess attorney's fees and punitive damages on the Defendant.

Several considerations factor into my award. The earlier litigation against Armbruster resulted in an award of nominal damages together with attorney's fees of about $8000 and punitive damages of $7500. That award was entered on March 10, 2010. In the subsequent

---

[4] The Court, consistent with a finding in the Armbruster case, infra., does not find that the request by the Defendant to its law firm to file a lien against the Plaintiff is a violation of the automatic stay. Likewise, the actual filing of the lien is not a violation of the stay by the Defendant, Commonwealth Financial.

litigation involving alleged stay violations, (*In re Rasieleski*), a mediated settlement was reached in the amount of $25,000. Although the settlement was publicly noticed pursuant to Federal Rule of Bankruptcy Procedure 9019, the parties to that settlement agreed that it was not to be construed as an admission of liability. Doc. #38, Exhibit A, ¶ 4.h. The settlement was reached February 1, 2011.

There, indeed, has been a number of other lawsuits in this District alleging that this Defendant has violated the automatic stay in several bankruptcies. Most of those alleged violations are said to have occurred prior to 2008.

With regard to the matter before me, the parties have stipulated to liability and have recounted numerous violations as aforesaid. Damages including lost pay and emotional damages are relatively nominal.

I find that the Defendant is a poorly organized entity with loose controls over its staff. Despite its historical track record, it has managed to minimize its violations of late. The only significant evidence of this company's value has been reduced to a bare statement that it has no net worth and some difficulty paying its bills. In assessing punitive damages, I have been cautioned by *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), that punitive damages should "fit the crime" and that excessive damages may be a violation of due process. While, no doubt, the violations were flagrant, they appear to be marked by gross negligence rather than "trickery and deceit." Commonwealth certainly fits the category of a recidivist whose activities will come under close scrutiny. Nevertheless, it appears to have finally got the message that stay violations will not be tolerated. For these reasons, I will award the sum of $500 actual damages, together with punitive damages of $7500 and attorney's fees.

[K:\Cathy\Opinions-Orders filed 2012\5-11-ap-00223-JJT_Grochowski.pdf]    5

Case 5:11-ap-00223-JJT    Doc 36    Filed 10/26/12    Entered 10/26/12 15:45:49    Desc
Main Document    Page 5 of 6

I direct counsel for the Plaintiff to file and serve a statement of fees on both Defendants on or before thirty (30) days from the date of this Order. A hearing on that application and any objections thereto will be scheduled for Wednesday, **DECEMBER 19, 2012**, at **9:30** o'clock A.M. in Bankruptcy Courtroom No. 2, Max Rosenn U.S. Courthouse, 197 South Main Street, Wilkes-Barre, Pennsylvania.

Plaintiff also alleges that the discharge injunction found in 11 U.S.C. § 524(a)(2) was violated because of the Defendant's failure to apply payments it received pursuant to the Chapter 13 Plan according to the terms of the Plan. 11 U.S.C. § 524(I) reads as follows:

> (I) The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

The parties stipulated that the Defendant's application of the Trustee payments was not done pursuant to the terms of the Plan. See Stipulation ¶¶ 59-71 (Doc. #24). Upon the foregoing, the Court finds that the Defendant violated the discharge injunction of 11 U.S.C. § 524(a)(2).

My Order will follow.

By the Court,

Date: October 26, 2012

John J. Thomas, Bankruptcy Judge
(CMS)